UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| WENDY UNTERSHINE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>ADVANCED CALL CENTER TECHNOLOGIES LLC,<br><br>Defendant. | Case No.: 18-cv-77<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Wendy Untershine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6.  Defendant Advanced Call Center Technologies, LLC ("Advanced Call") is a foreign limited liability company with its principal place of business located at 1235 Westlakes Drive #160, Berwyn, Pennsylvania 19312.

7.  Advanced Call does substantial business in Wisconsin and maintains a registered agent for service of process at C T Corporation System, 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

8.  Advanced Call is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9.  Advanced Call is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. Advanced Call is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about August 17, 2017, Synchrony Bank ("Synchrony") mailed Plaintiff a credit card account statement to Plaintiff regarding an alleged debt Plaintiff allegedly owed to Synchrony for purchases and other charges incurred as a result of the use of her Wal Mart-branded credit card. A copy of this account statement is attached to this Complaint as Exhibit A.

12. Exhibit A contains the following:

| Payment Information | |
|---|---|
| New Balance | $1,833.19 |
| Amount Past Due | $131.00 |
| Total Minimum Payment Due | $224.00 |
| Overlimit Amount | $33.19 |
| Payment Due Date | 09/09/2017 |

Exhibit A.

2

13. Exhibit A states that, as of August 17, 2017, Plaintiff's alleged Wal-Mart credit card account with an account number ending in 4316 had a "New Balance" of $1,833.19, with an "Amount Past Due" of $131.00, a "Total Minimum Payment Due" of $224.00," and a "Payment Due Date" of September 9, 2017.

14. On or about August 20, 2017, Synchrony mailed a debt collection letter to Plaintiff regarding her alleged Walmart credit card account ending in 4316. A copy of this letter is attached to this Complaint as Exhibit B.

15. Exhibit B contains the following:

> Dear Wendy M Untershine,
>
> September 4, 2017 is the LAST DAY FOR PAYMENT.
> $131.00 is the AMOUNT NOW DUE.
>
> You are late in making your payment(s). If you pay the AMOUNT NOW DUE (above) by the LAST DAY FOR PAYMENT (above), you may continue with the contract as though you were not late. Payment should be sent to us at the address set forth below. If you do not pay by this date, we may exercise our rights under the law.

Exhibit B.

16. Exhibit B states that "$131.00 is the AMOUNT NOW DUE."

17. Exhibit B further states that Plaintiff could return her account to a current status by paying the "AMOUNT NOW DUE" by September 4, 2017.

18. Exhibit B further states that, if Plaintiff did not return her account to a current status by September 4, 2017, Synchrony "may exercise [its] rights under the law."

19. The "AMOUNT NOW DUE" stated in Exhibit B is the "Amount Past Due" stated in Exhibit A.

20. On or about October 17, 2017, Synchrony mailed Plaintiff a credit card account statement to Plaintiff regarding the same alleged debt. A copy of this account statement is attached to this Complaint as Exhibit C.

21. Exhibit C contains the following:

3

```
Payment Information
New Balance              $1,985.08
Amount Past Due            $317.00
Total Minimum Payment Due  $416.00
Overlimit Amount           $185.08
Payment Due Date         11/09/2017
```

Exhibit C.

22. Exhibit C states that, as of October 17, 2017, Plaintiff's alleged Wal-Mart credit card account with an account number ending in 4316 had a "New Balance" of $1,985.08, with an "Amount Past Due" of $317.00, a "Total Minimum Payment Due" of $416.00," and a "Payment Due Date" of November 9, 2017.

23. On or about November 1, 2017, Advanced Call mailed Plaintiff a debt collection letter regarding Plaintiff's alleged "Walmart Credit Card." A copy of this letter is attached to this Complaint as Exhibit D.

24. The alleged debt referenced in Exhibit D was Plaintiff's Wal Mart-branded credit card account with an account number ending in 4316, and the alleged debt was incurred for personal, family or household purposes, including purchases of household goods from Wal Mart.

25. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Upon information and belief, Exhibit D is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

27. Upon information and belief, Exhibit D was the first letter Defendant sent to Plaintiff regarding this alleged debt.

28. Exhibit D contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

4

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit D.

29. Exhibit D also contains the following:

```
ACCOUNT #: ENDING IN 4316
TOTAL ACCOUNT BALANCE: $1,985.08
AMOUNT NOW DUE: $416.00
```

Exhibit D.

30. Exhibit D states that, as of November 1, 2017, the alleged debt had a "TOTAL ACCOUNT BALANCE" of $1,985.08 and an "AMOUNT NOW DUE" of $416.00.

31. Exhibit D is false, deceptive, misleading, and confusing to the unsophisticated consumer.

32. The unsophisticated consumer has previously received letters from the creditor that indicate the "amount now due" is the "amount past due."

33. Exhibit D states that the "AMOUNT NOW DUE" is the "Total Minimum Payment Due" stated in Exhibit C.

34. There is a difference between the "Amount Past Due" and the "Total Minimum Payment Due." The "Total Minimum Payment Due" is the sum of the "amount past due" and the minimum payment, which is not itself due until the "Payment Due Date."

35. It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

5

36. Thus, under *Barnes*, Advanced Call cannot attempt to collect portions of the balance that are "owed" to Synchrony but are not yet "due." *Barnes*, 493 F.3d at 840 ("only the past due amount, the amount owed [to the debt collector], can be the amount of the debt . . . ."); *see also* 15 U.S.C. § 1692e(2)(a) (prohibiting misrepresentations about the legal status of a debt).

37. Upon information and belief, the purpose of Advanced Call's conduct – attempting to collect the "Total Minimum Payment Due" rather than the "Amount Past Due" – is to increase its profits under false pretenses.

38. Upon information and belief, Advanced Call, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.")

39. Upon information and belief, if a consumer pays Advanced Call an amount greater than the "Amount Past Due," Advanced Call is still entitled to retain a portion of that recovery.

40. Plaintiff was confused by Exhibit D.

41. The unsophisticated consumer would be confused by Exhibit D.

### *The FDCPA*

42. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers'

allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

7

43. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

44. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

46. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

48. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, chare, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

49. 15 U.S.C. § 1692g states:

> a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless

8

> the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

50. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

51. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### *The WCA*

52. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

9

53. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

54. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

55. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

56. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

57. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

58. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

59. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

60. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

61. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

62. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

63. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## **COUNT I – FDCPA**

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. Defendant misrepresented the "Amount Now Due" on Plaintiff's Synchrony account. *Compare* Exhibits A and B *with* Exhibits C and D.

66. Exhibit B, mailed shortly after Exhibit A, states that the "Amount Now Due" corresponds to the "Amount Past Due" stated in Exhibit A.

11

67. Exhibit D, mailed shortly after Exhibit C, states that the "Amount Now Due" corresponds to the "Total Minimum Payment Due" stated in Exhibit C.

68. Exhibit D states that the "Amount Now Due" as of November 1, 2017 was $416.00 but, as the term "Amount Now Due" was used by Synchrony, the actual "amount now due" was $317.00. Exhibit C.

69. The unsophisticated consumer would be misled to believe that her account had a past due amount of $416.00 as of the date of Exhibit D. In fact, as of the date of Exhibit D, Plaintiff could have brought her account current by paying the "Amount Past Due," $317.00, and paying an additional $99.00 approximately one week later.

70. At a minimum, the consumer would be confused as to whether payment of $317.00 or $416.00 would bring her account current.

71. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. Defendant misrepresented the "Amount Now Due" on Plaintiff's Synchrony account. *Compare* Exhibits A and B *with* Exhibits C and D.

74. Exhibit B, mailed shortly after Exhibit A, states that the "Amount Now Due" corresponds to the "Amount Past Due" stated in Exhibit A.

75. Exhibit D, mailed shortly after Exhibit C, states that the "Amount Now Due" corresponds to the "Total Minimum Payment Due" stated in Exhibit C.

76. Exhibit D states that the "Amount Now Due" as of November 1, 2017 was $416.00 but, as the term "Amount Now Due" was used by Synchrony, the actual "amount now due" was $317.00. Exhibit C.

77. The unsophisticated consumer would be misled to believe that her account had a past due amount of $416.00 as of the date of Exhibit D. In fact, as of the date of Exhibit D, Plaintiff could have brought her account current by paying the "Amount Past Due," $317.00, and paying an additional $99.00 approximately one week later.

78. At a minimum, the consumer would be confused as to whether payment of $317.00 or $416.00 would bring her account current.

79. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

80. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit D to the complaint in this action, (c) seeking to collect a credit card account debt owed to Synchrony Bank, (d) which debt was incurred for personal, family or household purposes (e) between January 16, 2017 and January 16, 2018, inclusive, (f) that was not returned by the postal service.

81. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

82. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

83. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

84. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

85. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

86. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 16, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com

14

bslatky@ademilaw.com