# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

WENDY UNTERSHINE, on behalf of
herself and all others similarly situated,

    **Plaintiff,**

    **v.**                                     **Case No. 18-CV-77**

ADVANCED CALL CENTER
TECHNOLOGIES, LLC,

    **Defendant.**

---

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR STAY AND COMPEL ARBITRATION, OR ALTERNATIVELY TO STRIKE THE CLASS ACTION ALLEGATIONS FROM THE COMPLAINT

---

Wendy Untershine filed a class action complaint against Advanced Call Center Technologies, LLC ("ACCT"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act ("WCA") based on actions taken by ACCT in the course of collecting a debt allegedly owed to Synchrony Bank for purchases and other charged incurred as a result of the use of her Walmart branded credit card. (Docket # 1.) ACCT has filed a motion to compel Untershine to arbitrate the dispute pursuant to a provision in the Cardholder Agreement between Untershine and Synchrony Bank. (Docket # 11.) Alternatively, ACCT moves to strike the class action allegations from the complaint. For the reasons that follow, the defendant's motion to dismiss or to stay and compel arbitration, or alternatively to strike the class action allegations from the complaint, is denied.

# BACKGROUND

On or around December 12, 2015, Synchrony issued a Walmart branded credit card account in the name of Wendy M. Untershine bearing an account ending in 4316. (Declaration of Joline White ("White Decl.") ¶ 4, Docket # 13.) A credit card bearing the account number and a copy of the credit card agreement that governed the account were mailed to Untershine at the address of record for the account. (*Id.*) Subsequent changes were made to the agreement and were included with the account's billing statements. (*Id.*) Purchases were posted to the account from December 12, 2015 through January 27, 2017, with the last payment posting on June 3, 2017. (*Id.* ¶ 6.) ACCT collects debts on behalf of Synchrony and Synchrony assigns credit card accounts to ACCT for collection. (Declaration of Marc Keller ("Keller Decl.") ¶¶ 2-3, Docket # 14.) Synchrony assigned Untershine's Walmart branded credit card account to ACCT for collection purposes on or about November 1, 2017 due to non-payment. (Keller Decl. ¶ 7, White Decl. ¶ 6.)

Untershine alleges in her complaint that she incurred a consumer debt to Synchrony Bank for purchases and other charges incurred as a result of the use of her Walmart branded credit card. (Compl. ¶¶ 4-5, 11.) Untershine alleges that on or about August 17, 2017, she received a credit card account statement from Synchrony that stated her "new balance" was $1,833.19, with a "payment due date" of September 9, 2017, an "amount past due" of $131.00 and a "total minimum payment due" of $224.00. (*Id.* ¶¶ 12-13.) On or about August 20, 2017, Synchrony mailed Untershine a debt collection letter stating that the "amount now due" was $131.00 and that she could return her account to a current status by paying the "amount now due" by September 4, 2017. (*Id.* ¶¶ 15-17.)

On or about October 17, 2017, Synchrony mailed Untershine a statement with a "new balance" of $1,985.08, an "amount past due" of $317.00, a "total minimum payment due" of $416.00," and a "payment due date" of November 9, 2017. (*Id.* ¶ 22.) On or about November 1, 2017, ACCT mailed Untershine a debt collection letter regarding Untershine's alleged Walmart credit card. (*Id.* ¶ 23.) ACCT is engaged in the business of collecting debts originally owed to others. (*Id.* ¶ 8.) The letter states that, as of November 1, 2017, the alleged debt had a "total account balance" of $1,985.08 and an "amount now due" of $416.00. (*Id.* ¶ 30.)

Untershine alleges that ACCT's letter is false, deceptive, misleading, and confusing to the unsophisticated consumer as the unsophisticated consumer had previously received letters from the creditor that indicated the "amount now due" was the same as the "amount past due." (*Id.* ¶¶ 31-32.) Untershine further alleges that the "amount now due" in ACCT's letter is the "total minimum payment due" found in a previous letter. (*Id.* ¶ 33.) Untershine alleges that she was confused by ACCT's letter and ACCT's letter violated the FDCPA and the WCA. (*Id.* ¶¶ 40, 64-79.)

The credit card agreement contains a class action waiver and arbitration provision that states as follows, in pertinent part:

**RESOLVING A DISPUTE WITH ARBITRATION**

**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

• **What claims are subject to arbitration**

1.   If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Wal-mart Stores, Inc. if it relates to your account, except as noted below.

2.   We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

3.   Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

**• No Class Actions**

**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**

\*\*\*

**• Governing Law for Arbitration**

This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

**• How to reject this section**

**You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The**

**notice must include your name, address and account number, and must be mailed to Synchrony Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section.**

(White Decl. ¶ 4, Exh. A, Docket # 13-1 at 4-5.) ACCT alleges that Untershine did not exercise her right to reject the arbitration provision in the credit card agreement. (*Id.* ¶ 7.) ACCT now moves to compel Untershine to submit her claims to arbitration, or alternatively to strike the class action allegations from her complaint.

## APPLICABLE RULE

The Federal Arbitration Act generally requires a court to order arbitration when it finds: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal by the opposing party to proceed to arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Whether the parties entered into a written agreement to arbitrate is a matter of state contract law. *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 806 (7th Cir. 2003). The parties do not dispute that, pursuant to the credit card agreement, Utah law governs. Because a motion to compel arbitration is treated as an assertion that the court lacks subject-matter jurisdiction, the court may also consider background information in the form of exhibits and affidavits. *Fox v. Nationwide Credit, Inc.*, No. 09-CV-7111, 2010 U.S. Dist. LEXIS 88654, at *5-6 (N.D. Ill. Aug. 25, 2010). The defendant bears the burden of demonstrating that an agreement requires arbitration. *Id.*

## ANALYSIS

Untershine does not dispute that a valid arbitration agreement and class action waiver exists between Untershine and Synchrony. (Pl.'s Resp. Br. at 5, Docket # 15.) Untershine argues, however, that under Utah law, ACCT cannot enforce the arbitration and class waiver provisions for its own benefit, even if ACCT is Synchrony's agent. (*Id.*) ACCT

argues that because Untershine's claims arise out of the credit card agreement and ACCT was acting as Synchrony's agent and assignee when it was attempting to collect the debt, it may invoke the arbitration provision to compel Untershine to arbitrate. (Def.'s Br. at 7-8, Docket # 12.)

Again, the parties do not dispute that Utah law governs this case. When applying a state's substantive law, the court must use its "own best judgment to estimate how the [Utah] Supreme Court would rule." *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 791 (7th Cir. 2013) (internal quotation and citation omitted). When the state's supreme court has not spoken directly to an issue, the court may give "proper regard" to the state's lower courts. *Id.* Thus, the issue before me is whether, under Utah law, a nonsignatory (ACCT) can invoke an arbitration agreement to compel a signatory (Untershine) to arbitrate.

The Utah state courts have not addressed the precise issue of whether a nonsignatory debt collector can compel the alleged signatory debtor to arbitrate a claim arising under the FDCPA based on an arbitration provision in a credit agreement between the debtor and the creditor. However, the parties seem to agree that the two primary Utah Supreme Court cases at issue are *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, 100 P.3d 1200 and *Ellsworth v. American Arbitration Ass'n*, 2006 UT 77, 148 P.3d 983. In *Fericks*, the Utah Supreme Court held that "as a general rule, only parties to the contract may enforce the rights and obligations created by the contract." 2004 UT 85, ¶ 24 (citation omitted). However, in *Ellsworth*, the court stated that "under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties." *Ellsworth*, 2006 UT 77, ¶ 19. Those circumstances fall into five groups: "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." *Id.* ¶ 19

n.11. ACCT argues that it can enforce the arbitration agreement between Untershine and Synchrony under principles of either agency or estoppel. (Def.'s Reply Br. at 9, Docket # 17.) I will address each argument in turn.

*Agency Theory*

ACCT argues that as Synchrony's agent and assignee, it is permitted to enforce the arbitration agreement against Untershine. Untershine argues that even if ACCT is Synchrony's agent, Utah law does not permit an agent to invoke a provision of a contract between the agent's principal and a third party for the agent's own benefit, relying on *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017), *Taylor v. Advanced Call Ctr. Techs., LLC*, No. 17 C 1805, 2017 U.S. Dist. LEXIS 208888 (N.D. Ill. Dec. 20, 2017), and *Fericks* for support.

The Utah Supreme Court in *Fericks* addressed the issue of agency. In *Fericks*, prospective real estate buyers appealed from the dismissal of their claims against the sellers' agents, as well as the award of attorney's fees to those agents. In reversing the dismissal of the plaintiffs' claims, the Utah Supreme Court addressed the attorney's fees issue to provide guidance to the district court. The defendants argued that as agents of the sellers, they were entitled to enforce an attorney's fee provision in the purchase contract that the sellers had signed. The plaintiffs argued that because the agents were not parties to the contract, they could not recover fees under that provision.

The Utah Supreme Court held that the defendants were not entitled to attorney's fees, even though they were agents of the sellers, because "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit." 2004 UT 85, ¶ 24.

Two years later in *Ellsworth*, a signatory plaintiff attempted to compel a nonsignatory defendant to arbitrate under agency theory. In *Ellsworth*, a construction company filed an arbitration demand against Ellsworth and his ex-wife for claims involving a contract that only she had signed. The court found Ellsworth was not bound to the arbitration agreement through the nonsignatory theory of agency because there was no evidence that Ellsworth's ex-wife had the authority to act as an agent for Ellsworth. 2006 UT 77, ¶ 21.

The Tenth Circuit addressed both *Fericks* and *Ellsworth* in *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017). In *Belnap*, the plaintiff, a surgeon, entered into an agreement with the Salt Lake Regional Medical Center ("SLRMC") to provide consulting services. The agreement contained an arbitration provision. The plaintiff brought various claims against SLRMC, its parent company, and several of its individual employees; however, the arbitration agreement was only between the plaintiff and SLRMC. The defendants moved to compel arbitration on the basis of the arbitration provision in the agreement. The *Belnap* court was presented with the issue of whether the nonsignatory defendants could compel the signatory plaintiff to arbitrate based on the arbitration provision of the agreement.

Applying Utah law, the *Belnap* court found that the defendants had not asserted a theory under which the nonsignatory defendants could compel the plaintiff to arbitrate. The nonsignatory defendants argued that as principals and agents of SLRMC, they too are entitled to the protection of the agreement's arbitration provision. The plaintiff argued that under *Fericks*, a nonsignatory agent cannot enforce a contract for his or her own benefit. The defendant argued that *Ellsworth* provided an exception to that general rule. The *Belnap* court disagreed, finding that:

> *Ellsworth* left unscathed *Fericks*'s express statement that "an agency relationship with a principal to a contract does not give the agent the

> authority to enforce a contractual term for the agent's own benefit." *Fericks*,
> 100 P.3d at 1206. *Ellsworth* and *Fericks* dealt with fundamentally different
> issues and do not conflict. In *Ellsworth*, the alleged agent—the nonsignatory
> defendant Mr. Ellsworth—never attempted to enforce contractual terms for
> his own benefit. Instead, the signatory plaintiff did, and so the (alleged) agent
> sought to avoid the enforcement of contractual terms against himself. As a
> result, the Utah Supreme Court never addressed in *Ellsworth* whether an agent
> can enforce a contractual term for the agent's own benefit; indeed, the
> *Ellsworth* opinion did not even mention *Fericks*. Thus, we remain bound by
> *Fericks*'s express statement that an agent acting for its own benefit cannot
> enforce such a term. As applied here, because Defendants do not dispute that
> they seek to enforce the Agreement's arbitration provision for their own
> benefit, we conclude that they cannot compel Dr. Belnap to arbitrate.

*Id.* at 1298. Following *Belnap*, a district court in this circuit recently found that a

nonsignatory defendant could not compel the signatory plaintiff to arbitrate based on agency

theory. In *Taylor v. Advanced Call Ctr. Techs., LLC*, No. 17 C 1805, 2017 U.S. Dist. LEXIS

208888 (N.D. Ill. Dec. 20, 2017), the plaintiff alleged that ACCT (the defendant in this case)

violated the FDCPA when it failed to inform her that her account balances may vary based

on the application of interest. The cardholder agreement between the plaintiff and GE

Capital Reserve Bank (the predecessor-in-interest to Synchrony Bank), contained an

arbitration provision. As in this case, the plaintiff argued that ACCT, as a nonsignatory,

cannot enforce the arbitration provision against her. ACCT argued that it enjoyed the

benefits of the arbitration provision as Synchrony's agent.

The court found that ACCT's position was "untenable in light of *Fericks* and *Belnap*."

*Id.* at *6. The court stated that "Utah Supreme Court precedent as interpreted by the Tenth

Circuit makes clear that a nonsignatory's agency relationship with a principal does not

authorize the agent to enforce a contractual term, such as an arbitration clause, for the

agent's own benefit." *Id.* at *8. The court found that ACCT was seeking to enforce the

arbitration clause in the cardholder agreement for its own benefit by attempting to compel

the plaintiff to arbitrate. *Id.* Because the court found that *Fericks* and *Belnap* did not permit this, it denied ACCT's motion to compel arbitration.

ACCT argues that the *Belnap* court's statement that "the Utah Supreme Court never addressed in *Ellsworth* whether an agent can enforce a contractual term for the agent's own benefit" was incorrect. (Def.'s Reply Br. at 4.) ACCT argues that what the *Ellsworth* court ruled was that "under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties." (*Id.*) ACCT further argues:

> The distinction drawn by the *Belnap* court makes no sense. Why would a nonsignatory choose to "enforce" an arbitration agreement unless it was "for [its] own benefit?" Furthermore, the *Ellsworth* decision does not differentiate between "nonsignatory plaintiffs" and "nonsignatory defendants," or even suggest that they should be treated differently. That distinction was created out of whole cloth by the Court of Appeals for the Tenth Circuit in *Belnap*.

(*Id.*) For these reasons, ACCT argues that I should not follow *Belnap*. I do not believe that the *Belnap* court's statement, as cited by ACCT, was incorrect. While the *Ellsworth* court made the general statement that under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties, *Ellsworth*, 2006 UT 77, ¶ 19, the *Ellsworth* court did not, in fact, address whether an agent can enforce a contractual term for the agent's own benefit. This is because the court determined that Ellsworth was not bound to the arbitration agreement through the nonsignatory theory of agency because there was no evidence that Ellsworth's ex-wife had the authority to act as an agent for Ellsworth. *Id.* ¶ 21. Thus, the *Ellsworth* court did not analyze agency theory.

While ACCT questions why a nonsignatory would ever choose to enforce an arbitration agreement unless it was for his own benefit, ACCT is truly challenging the *Fericks* court's conclusion, not the *Belnap* court's conclusion. ACCT is correct, however, that

the difference between a nonsignatory plaintiff and nonsignatory defendant does not matter in terms of agency theory. ACCT is incorrect, though, in stating that the *Ellsworth* decision did not differentiate between nonsignatory plaintiffs and nonsignatory defendants. As will be further explained below, this difference matters for nonsignatory estoppel theory and *Ellsworth* was analyzing this theory.

The District of Utah addressed the interplay between *Fericks* and *Ellsworth* in *Nueterra Healthcare Mgmt., LLC v. Parry*, 835 F. Supp. 2d 1156, 1161 (D. Utah 2011). In *Nueterra*, the defendants, who were nonsignatory third parties to an arbitration agreement, sought to enforce an arbitration agreement under Utah law as agents of a signatory. The plaintiffs argued, pursuant to *Fericks*, that the nonsignatory defendants cannot benefit from the contract by virtue of their agency relationship. The court found that:

> At first blush, the *Fericks* case would seem to be in direct contravention to the Utah Supreme Court's later holding in *Ellsworth*. However, these cases can be read in harmony if they are interpreted to stand for the proposition that the five theories for binding a nonsignatory to an arbitration agreement are exceptions to the general rule stated in *Fericks*. The Court is persuaded that this is the appropriate reading of these cases. "[T]o hold otherwise would make it 'too easy to circumvent [arbitration] agreements by naming individuals as defendants instead of the [signatory] entity [itself].'"

*Id.* at 1162 (internal citation omitted).

ACCT argues that a more reasonable interpretation of *Fericks* and *Ellsworth* was reached by the district courts in *Lagrone v. Advanced Call Ctr. Techs., LLC*, No. C13-2136JLR, 2014 WL 4966738 (W.D. Wash. Oct. 2, 2014) and *St. Pierre v. Advanced Call Ctr. Techs., LLC*, No. 215CV02415JADNJK, 2016 WL 6905377 (D. Nev. Nov. 22, 2016). *Lagrone*, like *Nueterra*, interprets *Ellsworth* as an exception to *Fericks*. In *Lagrone*, 2014 WL 4966738 at *1, the plaintiff sued ACCT for alleged violations of the FDCPA. ACCT moved to compel the plaintiff to arbitrate her claims based on an arbitration provision found in the plaintiff's

credit card agreement. The court was faced with the question of whether, under Utah law, ACCT could compel the plaintiff to arbitrate under theories of agency or assignment. The *Lagrone* court found that the Utah Supreme Court's pronouncement in *Ellsworth* that "under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties," and the *Ellsworth* court's statement that one of the five recognized theories for binding a nonsignatory to an arbitration agreement includes agency, created an exception to *Fericks*' general rule that agents cannot enforce provisions of their principals' contracts. *Id.* at *5.

While the *Lagrone* court predicted that the Utah Supreme Court would permit a nonsignatory agent to enforce an arbitration provision in its principal's contract, its rationale is unpersuasive. First, the court found that Ellsworth's language that "under certain circumstances, a nonsignatory to an arbitration agreement *can enforce* or be bound by an agreement between other parties" was broad enough to encompass situations in which a nonsignatory seeks to enforce an arbitration agreement. *Id.* (quoting *Ellsworth*, 148 P.3d at 989) (emphasis in original). The court also relied on one Utah Court of Appeals case and two District of Utah cases that the *Lagrone* court stated interpreted *Ellsworth* as permitting nonsignatories to enforce arbitration provisions. *Id.* The *Lagrone* court cites to *Educators Mut. Ins. Ass'n v. Evans*, 258 P.3d 598, 614 (Utah Ct. App. 2011), *CollegeAmerica Servs., Inc. v. W. Ben. Solutions, LLC*, No. 2:11 CV01208 DS, 2012 WL 1559745, at *2–3 (D. Utah May 2, 2012), and *NAFEP Mgmt. Co. v. Binkele*, No. 2:06–CV–369 TS, 2007 WL 1726435 (D. Utah June 12, 2007).

These cases, however, are not helpful to the analysis. In *Binkele*, the court made no decision on either nonsignatory estoppel or agency theory; rather, the court found that it

was first necessary to conduct a trial on the issue of whether there was even an agreement to arbitrate. 2007 WL 1726435, at *1-2. *CollegeAmerica* addressed estoppel, not agency theory. 2012 WL 1559745, at *2.

And while *Evans* addressed agency, the arbitration provision at issue included the alleged agent in the agreement. More specifically, in *Evans*, the administrator of Salt Lake City's disability benefits (Educators Mutual Insurance Association) sued Evans for breach of contract and seeking reimbursement of alleged overpayment of disability benefits. Evans counterclaimed for breach of contract and brought a third-party claim against the City. The City moved for summary judgment on the ground that Evans had failed to arbitrate his claim pursuant to an arbitration clause in the Group Long-Term Disability Plan. Evans argued that the arbitration clause was unenforceable. Specifically, that Educators acted as the City's agent and by pursuing litigation, Educators waived not only its own right to arbitrate, but the City's.

The court agreed with Evans that Educators, as the City's agent, waived the City's right to arbitrate. However, the arbitration clause in the Plan specifically stated that "[t]he covered employee may initiate arbitration proceedings by giving written notice to Educators, on behalf of the City, of the election to proceed with binding arbitration." 2011 UT App 171, ¶ 68. The Plan also stated that "[t]he arbitration shall be conducted by a single arbitrator selected by mutual agreement of the covered employee and Educators, on behalf of the City." *Id.* Thus, the court found that the Plan's arbitration clause was binding on the City as well as on Educators and Educators' waiver of the right to compel arbitration in lieu of litigation also waived that right for the City. *Id.* The *Evans* court does not address *Ellsworth*.

In *St. Pierre v. Advanced Call Ctr. Techs., LLC*, No. 215CV02415JADNJK, 2016 WL 6905377 (D. Nev. Nov. 22, 2016), the plaintiff alleged that ACCT violated the FDCPA in collecting a debt she owed to Synchrony. ACCT sought to compel the plaintiff to arbitrate based on an arbitration provision in the credit agreement between plaintiff and Synchrony. ACCT argued, under Utah law, it should be permitted to compel the plaintiff to arbitrate based on agency theory. The court found *Ellsworth* unhelpful because *Ellsworth* suggested that agency theory for compelling arbitration could be used when an agent is sued for breaching a contract; whereas, this case involved plaintiff suing ACCT for violating the FDCPA. Because the court found no useful Utah law, it considered the law of other jurisdictions.

The *St. Pierre* court found that the weight of authority across the nation indicated that an agent could avail itself of its principal's arbitration powers under a contract so long as the claim against the agent relates to that contract. *Id.* at *3. The court stated that "[t]hese cases suggest a common-sense principle: where two parties to an agreement contemplate that a principal's alleged wrongdoing would be subject to arbitration, it makes little sense to treat that principal's agent any differently—regardless of whether the claim directly arises from the contract's terms. After all, entities can only act through employees or agents, 'and an arbitration agreement would be of little value if it did not extend to [agents].'" *Id.* at *4 (internal citation omitted). The court concluded that it was "persuaded that the majority of courts have it right and that Utah courts would agree: agents can use their principal's arbitration rights if the claim against the agent relates to the principal's agreement and would be subject to arbitration had it been brought against the principal in the first place." *Id.*

Having found that ACCT, as the nonsignatory agent, could use Synchrony's arbitration rights if the plaintiff's claim related to the parties' agreement, the court addressed whether the plaintiff's FDCPA claim was sufficiently related to the credit agreement containing the arbitration clause. The court found that although the plaintiff's FDCPA claims did not directly depend on the terms of the agreement, the claims related to ACCT's attempts to enforce Synchrony's rights under the agreement. *Id.* The court further noted that the agreement required arbitration of any claim relating to the plaintiff's account generally, which would include claims relating to attempts to collect on that account. *Id.* at *4 n.32.

Interestingly, the District of Utah recently considered this same issue and seemingly conflicted with *Belnap*. In *Inception Mining, Inc. v. Danzig, Ltd.*, No. 17-CV-944, 2018 WL 1940883, at *1 (D. Utah Apr. 23, 2018), the plaintiff filed a declaratory judgment action relating to an arbitration proceeding pending in Salt Lake City, Utah and Boston, Massachusetts. The plaintiffs argued that two individual plaintiffs were not proper parties to the arbitrations because they did not execute the agreement that contained the arbitration clause. The defendants agreed that the individual plaintiffs were not signatories to the agreement, but argued they were nonetheless bound by the agreement based on agency and estoppel theories. Thus, this was a situation where the signatory defendants were attempting to compel arbitration on the nonsignatory plaintiffs. The court determined that Utah law applied to the question of whether the individual plaintiffs were bound by the agreement's arbitration clause through agency. However, the court then cited Fifth Circuit law and found that under agency theory, "'it matters whether the party resisting arbitration is a signatory or not.'" *Id.* at *6 (quoting *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 316 (5th Cir. 2011)). The court noted that there is a distinction between situations "in which a

nonsignatory is *resisting*, rather than *seeking to enforce* arbitration." *Id.* at *8 (emphasis in original). The court found that "[n]onsignatory agents may compel, but may not be compelled. They may adopt the protection contracted by their principal, but may not be forced to arbitrate against their will." *Id.*

Courts such as *Lagrone* and *Nueterra* attempted to harmonize *Fericks* and *Ellsworth* by finding that because *Fericks* did not involve an arbitration agreement and *Ellsworth* did, *Ellsworth* is an exception to *Fericks*' statement that an agent cannot enforce a contractual term for the agent's own benefit. I do not agree with this analysis. Whether parties agree to arbitrate is a matter of state contract law. *Hawkins*, 338 F.3d at 806. And *Ellsworth* certainly makes no indication that it means to treat arbitration agreements differently than any other contract. Thus, I agree with the *Belnap* court's analysis that *Ellsworth* did not specifically address agency theory in the context of a nonsignatory defendant compelling a signatory plaintiff to arbitrate. *Fericks* express statement is that an agent cannot enforce a contractual term for the agent's own benefit. Thus, ACCT, a nonsignatory to the arbitration agreement, cannot compel Untershine to arbitrate under agency theory.

*Estoppel Theory*

ACCT also argues that it seeks to enforce the arbitration agreement under the doctrine of estoppel. (Def.'s Reply Br. at 9.) The *Ellsworth* court recognized three categories of nonsignatory estoppel. The first category is when a nonsignatory has sued a signatory on the contract to his benefit, but sought to avoid the arbitration provision of the same contract. 2006 UT 77, ¶ 20. The second category is when a nonsignatory sues a signatory on the agreement after receiving a direct benefit from the contract that contains the arbitration clause, but seeks to avoid arbitration. *Id.* A third variety is that enforced by a nonsignatory

when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the arbitration provision in the contract by relying on the fact that the defendant is a nonsignatory. *Id.* ¶ 20 n.12.

In this case, ACCT (as the nonsignatory defendant) is attempting to compel Untershine (as the signatory plaintiff) to arbitrate her FDCPA and WCA claims. Untershine seeks to avoid arbitration by relying on the fact that ACCT is a nonsignatory. Thus, only the third category is potentially applicable in this case. In *Belnap*, although the court acknowledged that the only conceivable category implicated by the facts was this third category, the defendants did not seek relief under that theory of nonsignatory estoppel. Thus, the court did not address it. Untershine seems to acknowledge that the third category of equitable estoppel could apply in this case; however, she argues that she is not suing the defendant "on the contract." (Pl.'s Resp. Br. at 20.) Rather, the FDCPA and WCA claims arise from the debt collector's conduct, not the terms of the original agreement. (*Id.*)

The *Ellsworth* court stated that for the third category of nonsignatory estoppel to apply, it must be that a signatory plaintiff sues a nonsignatory defendant *on the contract* but seeks to avoid the contract's arbitration provision by relying on the fact the defendant is a nonsignatory. 2006 UT 77, ¶ 20 n.12 (emphasis added). Untershine argues that its FDCPA and WCA claims are not claims "on the contract." The arbitration provision contains the following language regarding the scope of disputes:

> If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Wal-mart Stores, Inc. if it relates to your account, except as noted below.

(Docket # 13-1 at 4.) Again, the Utah courts have not specifically spoken on this issue and the courts that have addressed whether FDCPA claims fall under similarly broad arbitration clauses divide on the issue.

As stated above, in *St. Pierre*, 2016 WL 6905377, the court found that although the plaintiff's FDCPA claims did not directly depend on the terms of the agreement, the claims related to ACCT's attempts to enforce Synchrony's rights under the agreement. *Id.* at *4. The court further noted that the agreement required arbitration of any claim relating to the plaintiff's account generally, which would include claims relating to attempts to collect on that account. *Id.* at *4 n.32; *see also Reisinger v. Jefferson Capital Systems, LLC*, No. 15-CV-474 (E.D. Wis. Sept. 22, 2015) (assuming, without deciding, that an FDCPA claim would fall under arbitration agreement that defined claim as "any claim, dispute, or controversy . . . arising out of or relating in any way to this Contract").

Similarly in *Johnson v. Discover Bank*, No. 17-CV-412, 2018 U.S. Dist. LEXIS 23145 (W.D. Wis. Feb. 12, 2018), the plaintiffs sued the defendant under the FDCPA, arguing that the defendant violated the statute by impermissibly publishing their credit scores by attaching billing statements to pleadings in their bankruptcy cases without redacting the credit scores. The defendant moved to compel arbitration based on a provision of the credit card agreement in which the parties agreed to arbitrate "a dispute between [the cardholder] and [Discover] arising under or relating to this Account." *Id.* at *3-4. The court found that the plaintiffs' FDCPA claim fell under the broad language of this provision. The court found that the plaintiffs were "challenging defendants' decision to publish information in plaintiffs' *account* statements by attaching those statements to pleadings in which Discover was seeking

to recover amounts past due on plaintiffs' *accounts*. Under any reasonable reading, plaintiffs' claims 'relat[e] to' their account with Discover." *Id.* at *5.

In *Fox v. Nationwide Credit, Inc.*, No. 09-CV-7111, 2010 U.S. Dist. LEXIS 88654 (N.D. Ill. Aug. 25, 2010), the court found that the plaintiff's claim was not based on the terms of her cardholder agreement. The court stated that the plaintiff alleged that the defendant violated the FDCPA by leaving messages without identifying itself and without indicating that the calls were being made in an effort to collect a debt. *Id.* at *16-17. The court found that the mere existence of a debt did not justify extending the arbitration agreement to include alleged conduct prohibited by a debt collection statute by an excluded non-signatory entity. *Id.* at *17.

Similarly, in *Smith v. GC Servs., L.P.*, No. 16-CV-1897, 2018 U.S. Dist. LEXIS 19142 (S.D. Ind. Feb. 6, 2018), the plaintiffs filed a putative class action alleging that they were sent a debt collection letter that violated various provisions of the FDCPA. The credit card agreement contained an arbitration dispute that stated the claims subject to arbitration included "any dispute or claim between you and any other user of your account, and us, our affiliates, agents and/or Sam's Club if it relates to your account." *Id.* at *3. Relying on *Fox*, the court found the defendant could not compel arbitration under the doctrine of equitable estoppel because the plaintiffs' claims were not based on the terms of the credit card agreement; rather, the claims were that the defendant violated the FDCPA by informing her that any dispute of the debt must be in writing. *Id.* at *8.

I am more persuaded by the courts that have found that the plaintiff's FDCPA claim does not fall under the terms of the arbitration agreement. The FDCPA serves the specific purpose of prohibiting certain conduct by debt collectors, expressly excluding creditors

collecting debts on their own behalf. *Fox*, 2010 U.S. Dist. LEXIS 88654 at *17. Untershine's FDCPA and WCA claims arise from ACCT's conduct as a non-signatory debt collector— not from the terms of the credit card agreement. Thus, because Untershine did not sue ACCT "on the contract," ACCT cannot use equitable estoppel to compel Untershine to arbitrate. For these reasons, ACCT's motion to compel arbitration is denied.

ACCT also moves to strike Untershine's class action allegations in her complaint pursuant to the class action waiver contained in the credit card agreement. (Pl.'s Resp. Br. at 12.) However, for the same reasons ACCT cannot invoke the agreement's arbitration provision, it cannot invoke the class waiver provision.

## CONCLUSION

ACCT, a nonsignatory to a credit card agreement entered into between Untershine and Synchrony, seeks to compel Untershine to arbitrate her FDCPA and WCA claims against it pursuant to an arbitration clause contained in the agreement. Utah law applies, and ACCT argues that under either principles of agency or equitable estoppel, it can compel arbitration. I am not persuaded that ACCT can compel arbitration under either theory. Thus, ACCT's motion to compel arbitration is denied. ACCT further moves to strike the class action allegations from Untershine's complaint. However, for the same reasons ACCT cannot invoke the agreement's arbitration provision, it cannot invoke the class waiver provision.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion to dismiss or stay and compel arbitration, or alternatively to strike the class action allegations from the complaint (Docket # 11) is **DENIED**.

Dated at Milwaukee, Wisconsin this 18th day of June, 2018.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge